# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REBECCA REEVE,

        *Plaintiff*,

    v.                            Civil Action No. 24-408 (TJK)

MONEX INC. et al.,

        *Defendants*.

## MEMORANDUM OPINION & ORDER

Rebecca Reeve, the former Chief Compliance Officer for Monex, Inc., sues her former employer and two coworkers—John Green and Greg Lyumkis—under Title VII, the New York City Human Rights Law, and the District of Columbia Human Rights Act ("DCHRA"), in each case for creating a hostile work environment and for unlawful retaliation. Defendants move to dismiss in part. Lyumkis seeks to dismiss the claims against him for lack of subject-matter jurisdiction and for lack of personal jurisdiction. Monex and Green seek to partially dismiss the DCHRA hostile work environment claim against them as untimely. For the reasons explained below, the Court will grant the motion to dismiss Lyumkis for lack of personal jurisdiction but will deny the motion to dismiss the DCHRA hostile work environment claims against Monex and Green.

## I.    Background

### A.    Factual Background

Monex is a financial institution and a "money transmitter" required by law "to take steps to prevent money laundering, identity theft and other bad acts." ECF No. 38 ¶¶ 16, 19–20. To that end, in June 2022, Reeve was hired as Monex's Chief Compliance Officer. *Id.* ¶¶ 13–14. Her

responsibilities included oversight of its compliance and regulatory processes and ensuring the company was operating in accordance with federal and state laws. *Id.* ¶¶ 17, 20. Green and Lyumkis, senior male supervisors at Monex, often conducted business that caused compliance and regulatory concerns. *Id.* ¶ 18. According to Reeve, Monex's "heavily male dominated work force," including Green and Lyumkis, created a work environment that was "unfriendly to female employees." *Id.* ¶ 16. Reeve alleges that between July and September 2022, whenever she raised their compliance failures with Green or Lyumkis, they would "demean, berate, and/or dismiss" her. *Id.* ¶¶ 22–32. Reeve also claims that she "was . . . treated differently because she is a woman," and that neither Green nor Lyumkis ever "screamed at any men [nor] belittled any men when they raised concerns about anything . . . ." *Id.* ¶¶ 33–34. Indeed, she says, Reeve's "male subordinate, who carried out many of the same functions, was never treated in such manner." *Id.* ¶ 34.

Reeve alleges that in early November 2022, after she refused to remove certain compliance standards from the client onboarding process, Green took her to an office "where he berated her for over two hours." ECF No. 38 ¶¶ 37–38. The next day, Reeve raised concerns over approval of a new vendor "despite compliance criteria not being met," but her worries were once again brushed aside. *Id.* ¶ 39. And later that month, when Reeve refused to send an unsigned agreement to a client, Lyumkis "screamed at [her] so aggressively and maliciously that other employees had to come over and calm him down." *Id.* ¶¶ 40–43.

In December 2022, Lyumkis asked Reeve to send him a blank "Pay Advance" agreement on behalf of a client. ECF No. 38 ¶ 45. Reeve explained that doing so was "out of compliance with Monex policy, and that it was illegal and unenforceable for Lyumkis to enter a loan agreement on behalf of a client." *Id.* ¶¶ 45–46. After discovering that Lyumkis E-signed the agreement under the client's name instead of the client, Reeve complained but was "verbally attacked by Lyumkis."

*Id.* ¶¶ 47–49.  Later, in February 2023, Reeve notified Lyumkis that Monex could not accept the "potentially forged agreement because it would not bind the client."  *Id.* ¶ 50.  Lyumkis then became "incredibly hostile to [Reeve] in an inflammatory email."  *Id.* ¶ 51.

Following this incident, Reeve spoke to Green about Lyumkis's behavior, explaining that "she felt Lyumkis was treating her differently and harshly only because she is a woman."  ECF No. 38 ¶ 54.  Green told her that Lyumkis has been spoken to "ad nauseam" about his attitude and hostile demeanor towards women, but Green otherwise ignored Reeve's concerns.  *Id.* ¶ 55.  Even before that, in January 2023, Reeve had complained to Green that a different Monex employee was "bullying and demeaning," but Green replied by saying "'that's just how he is,' and that [Reeve] would have to 'get used to it.'"  *Id.* ¶ 56.  On February 13, 2023, after Reeve notified Green about Lyumkis' fraudulent E-signature on the loan agreement, Green "sought" to fire her.  *Id.* ¶¶ 60–61.  Reeve received a form severance agreement on February 22, 2023, and was encouraged to make her last day March 31, 2023.  *Id.* ¶¶ 62–63.  She was fired effective March 3, 2023.  *Id.* ¶¶ 64–65.

### B.    Procedural History

In August 2023, Reeve sued Monex, Green, and Lyumkis in the Southern District of New York.  *See* ECF No. 1.  In her first complaint, Reeve brought Title VII claims for hostile work environment and retaliation against Monex, and New York City Human Rights Law ("NYCHRL") claims for hostile work environment and retaliation against Monex, Green, and Lyumkis.  *Id.* ¶¶ 66–103.  After the court there determined that mediation was unlikely to be productive, Reeve filed an amended complaint.  *See* ECF Nos. 28, 36, 38.  In the Amended Complaint, Reeve maintained her Title VII claims against Monex and the NYCHRL claims against Lyumkis.  But she replaced the NYCHRL claims against Monex and Green with claims under the DCHRA.  ECF No. 38 ¶¶ 74–105.

A week after amending her complaint, Reeve moved to transfer to this Court. ECF No. 39. Defendants consented to transfer "with the agreement of . . . Reeve that Defendants may move to dismiss the . . . Amended Complaint . . . on any ground, including that the District of Columbia does not have personal jurisdiction over Defendant Lyumkis." *Id.* ¶ 5. The case was transferred to this Court in February 2024. Two weeks later Defendants moved to dismiss the Amended Complaint in part—as described above—for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. *See* ECF Nos. 41, 43.

## II.     Legal Standards

Under Rule 12(b)(2), the plaintiff bears the burden of making a "prima facie showing of the pertinent jurisdictional facts" to establish personal jurisdiction. *Md. Digit. Copier v. Litig. Logistics, Inc.*, 394 F. Supp. 3d 80, 86 (D.D.C. 2019) (quoting *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017)). "'Conclusory statements' or a 'bare allegation of conspiracy or agency' do not satisfy this burden." *Livnat*, 851 F.3d at 57 (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378–79 (D.C. Cir. 1988)). Rather, the plaintiff "must allege specific acts connecting [each] defendant with the forum." *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chi. Int'l*, 836 F.2d at 1378). "[T]o establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility . . . . Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). "When deciding personal jurisdiction without an evidentiary hearing . . ., the 'court must resolve factual disputes in favor of the plaintiff . . . .'" *Livnat*, 851 F.3d at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). But the Court need not accept inferences unsupported by the facts. *Id.*

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff states a facially plausible claim when they plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Even when construing the complaint in favor of the plaintiff and assuming all facts alleged in the complaint are true, the complaint must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[M]ere conclusory statements" are not enough to establish a plausible claim and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III.   Analysis

Defendants move to dismiss on three grounds, but the Court need only consider two of them to resolve their Motion.  First, Lyumkis argues that the Court lacks personal jurisdiction over him because the Amended Complaint fails to allege any contacts between him and the District of Columbia.[1]  Second, Monex and Green argue that the DCHRA hostile work environment claim against them should be partly dismissed insofar as it relies on time-barred actions.  The Court agrees with the first argument, but not with the second.

---

[1] Lyumkis's second argument is that the Court lacks subject-matter jurisdiction over the NYCHRL claims (which are asserted only against him) because Reeve is not a New York City resident and does not work there.  But because the Court finds that it lacks personal jurisdiction over Lyumkis and must dismiss him for that reason, it need not address the alternative argument that it lacks subject-matter jurisdiction over these claims.  *See Aljabri v. Saud*, No. 20-cv-2146 (TJK), 2022 WL 4598519, at *18 n.12 (D.D.C. Sept. 30, 2022) (citing *Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 463 (D.C. Cir. 1999) ("[I]t is 'perfectly proper for a court to resolve personal jurisdiction . . . without having first determined subject matter jurisdiction.'").

A.      **The Court Lacks Personal Jurisdiction Over Lyumkis**

Lyumkis argues the Court lacks personal jurisdiction over him.  There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017).  A court may exercise general jurisdiction only when a defendant is "essentially at home" in that court's jurisdiction.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).  All parties agree that Lyumkis is not at home in the District of Columbia.  *See* ECF No. 43 at 6.

As for specific jurisdiction, a federal court must look to the law of the forum state to "determin[e] the bounds of [its] jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).  Doing so entails a two-step process: first, ensuring that the forum state would authorize its courts to exercise jurisdiction over the defendant to hear the claims made against it and, second, whether doing so comports with the limits imposed by federal due process.  *See Forras v. Rauf*, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016).  Because the Court finds that Reeve has failed to establish that the Court has personal jurisdiction over Lyumkis under the District of Columbia Long Arm Statute, D.C. Code § 13-423, it will dismiss Lyumkis from this action.

The plaintiff "has the burden to identify which prong of the long-arm statute [she] is relying on as the basis for jurisdiction."  *Hoffman v. State Regul. Registry, LLC*, No. 20-cv-1493 (TJK), 2021 WL 2592960, at *3 (D.D.C. June 24, 2021) (cleaned up).  Reeve fails to carry that burden. Nowhere in the Amended Complaint does Reeve even allege that this Court has personal jurisdiction over Lyumkis under the District of Columbia Long Arm Statute, let alone identify which

prong of the statute on which she relies.[2]  And while a plaintiff may establish a prima facie case for personal jurisdiction through her pleadings, Reeve has not done so in any of her filings before the Court.  *Mwani*, 417 F.3d at 7.  As with her Amended Complaint, Reeve's Opposition Brief to Defendants' Motion to Dismiss—which addresses the issue of personal jurisdiction—fails to identify which prong of the statute she is relying on as the basis for personal jurisdiction over Lyumkis. This failure alone is likely sufficient to dismiss Lyumkis for lack of personal jurisdiction.  *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1095 (D.C. Cir. 2008) (explaining that to rely on a particular section of the long-arm statute, a plaintiff must "do so in a manner that [gives] the district court fair notice thereof so that the court [can] rule on it"), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021)).

Even putting aside Reeve's failure to identify the prong of the long-arm statute on which she relies, nothing in either Reeve's Amended Complaint or her briefing supports a finding of personal jurisdiction.  The closest she comes to alleging personal jurisdiction is stating that Lyumkis "was and does work for Defendant Monex, including trips to the District of Columbia," and that she "can say with certainty that on at least one occasion, Defendant Lyumkis worked in the District of Columbia with her."  ECF No. 47 at 6.  These statements are insufficient for at least two reasons.

First, they are unsupported by the record.  Although in determining personal jurisdiction the Court must resolve factual disputes in favor of the plaintiff, "[c]onclusory statements" and

---

[2] The Amended Complaint states that "[p]ursuant to an agreement between Plaintiff and Defendant Monex, jurisdiction and venue are proper before this Court."  ECF No. 38 ¶ 6.  But that agreement only applies to jurisdiction over Monex; not Lyumkis.  Indeed, in the consent motion transferring the case from the Southern District of New York, the parties expressly acknowledged that after transfer, Defendants could move to dismiss the Amended Complaint "on any ground, including that the District of Columbia does not have personal jurisdiction over Defendant Lyumkis."  *See* ECF No. 39 at 1–2.

"inferences [] unsupported by the facts" need not be accepted.  *Livnat*, 851 F.3d at 57 (quoting *Helmer*, 393 F.3d at 209.  Reeve cites her declaration as support for the statement that "on at least one occasion," Lyumkis worked with her in the District of Columbia.[3]  But the declaration contains no such assertion.  Indeed, the only context in which Reeve discusses working with Lyumkis in her declaration is in the company's New York City office.  *See* ECF No. 47-1 at 2.  And that is reinforced by Lyumkis's own declaration, in which he states that any contact between himself and Reeve happened while he was in New York.  ECF No. 43-2 ¶ 6.[4]  Thus, while Reeve asserts in her briefing that Lyumkis worked with her in the District of Columbia "on at least one occasion," that allegation is vague, unsupported by her declaration, and expressly refuted by Lyumkis's own dec-laration.  *See Doe v. City of Bos.*, No. 20-cv-2948 (CKK), 2021 WL 2457961, at *9 (D.D.C. June 16, 2021) (finding no personal jurisdiction because plaintiff's "unsubstantiated and ambiguous" claim of jurisdiction "offer[ed] no factual allegations or record evidence explaining . . . when and how Defendants contacted them").

Second, even assuming that there *was* some factual support for Reeve's assertions that Lyumkis worked with her at times in the District of Columbia, that would still fall short of properly alleging personal jurisdiction under the Long Arm Statute.  While the Long Arm Statute does provide that personal jurisdiction may arise from certain connections a party had with the District

---

[3] Of course, there is no dispute over Reeve's assertion that Lyumkis "was and does work for Defendant Monex."  ECF No. 47 at 6.  But "courts cannot exert jurisdiction over individual corporate officers or employees just because the court has jurisdiction over the corporation."  *Duarte v. Nolan*, 190 F. Supp. 3d 8, 13 (D.D.C. 2016) (internal quotation omitted).  Rather, "[e]ach defendant's contacts with the forum State must be assessed individually."  *Id.*  The only issue, therefore, is whether Lyumkis himself had sufficient contacts with the District of Columbia to establish personal jurisdiction over him.

[4] The Court "may consider evidence outside of the pleadings to resolve questions of per-sonal jurisdiction."  *Bronner v. Duggan*, 249 F. Supp. 3d 27, 36 (D.D.C. 2017) (citation omitted).

of Columbia—for example, if a party "transact[ed] any business in the District of Columbia" or "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia," D.C. Code § 13-423(a)(1), (3)—those connections alone do not establish jurisdiction. Rather, the plaintiff must allege that the claim for relief itself arose specifically from these connections. *Id.* § 13-423(b); *see also Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (holding that for personal jurisdiction "there must exist a relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct . . . create[s] a substantial connection with the forum") (internal quotations omitted).  In other words, the mere fact that Lyumkis may have sometimes worked with Reeve in the District of Columbia, standing alone, would not establish personal jurisdiction.  Instead, Reeve must allege that the acts giving rise to her specific claims against Lyumkis took place while they were working in the District of Columbia.  At no point does Reeve make such allegations.[5]  For all these reasons, the Court does not have personal jurisdiction over Lyumkis, and so it must dismiss him.

### B.     The DCHRA Hostile Work Environment Claim Against Monex and Green is Not Time-Barred

For their part, Monex and Green seek to partially dismiss the hostile work environment claim against them under the DCHRA insofar as it is based on acts that occurred before January

---

[5] Reeve claims that the "extent to which Defendant Lyumkis worked in the District of Columbia is a matter of discovery." ECF No. 47 at 6.  And it is true that if a plaintiff "demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *Urquhart-Bradley*, 964 F.3d at 48 (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351–52 (D.C. Cir. 2000)).  But here, putting aside the dispute about whether Lyumkis ever worked in the District of Columbia, Reeve has provided no allegations that the claims in this suit arose out of those connections to this jurisdiction.  Thus, there is no basis for discovery.  *See Idas Res. N.V. v. Empresa Nacional De Diamantes De Angola E.P.*, No. 06-cv-570 (ESH), 2006 WL 3060017, at *12 (D.D.C. Oct. 26, 2006) ("Because plaintiffs have not presented allegations that, even if verified, would establish subject matter jurisdiction, jurisdictional discovery is unwarranted.").

12, 2023.[6]  The DCHRA requires that a "private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act . . . ." D.C. Code § 2-1403.16(a).  Reeve first alleged a hostile work environment claim under the DCHRA in her Amended Complaint on January 12, 2024.  *See* ECF No. 35 ¶¶ 74–80.  Thus, the DCHRA's one-year statute of limitations only stretches back to January 12, 2023.

To begin, the Court notes that Reeve alleges as part of her hostile work environment claim at least two acts that happened *after* January 12, 2023—in other words, within the statute of limitations.  First, Reeve alleges that after she notified Lyumkis on February 6, 2023, that Monex could not accept a potentially forged "Pay Advance" agreement, Lyumkis became "incredibly hostile to [Reeve] in an inflammatory email."  ECF No. 35 ¶¶ 50–51.  Second, she alleges that following this incident, she spoke to Green about how "she felt Lyumkis was treating her differently and harshly only because she is a woman," and that Green ignored these concerns.  ECF No. 38 ¶¶ 54–55.[7]  Monex and Green do not dispute that claims based on these acts were timely filed, nor do they seek to dismiss the entire DCHRA hostile work environment claim.  They seek dismissal only "to the extent that those claims are based upon acts that occurred prior to January 12, 2023."[8]  ECF

---

[6] In their motion to dismiss, Monex and Green also sought to dismiss the retaliation claims under the DCHRA for the same reason.  *See* ECF No. 43 at 7.  However, in their reply, they concede that Reeve's retaliation claims are wholly within the statute of limitations.  ECF No. 48 at 3.  As they acknowledge, Reeve's discharge from Monex occurred after January 12, 2023, which is the relevant statute of limitations date for Reeve's DCHRA claims.  *See id.*

[7] Additional timely filed acts may exist as well.  Reeve says she complained to Green about a Monex employee who was "bullying and demeaning," but that Green replied by saying "'that's just how he is,' and that [Reeve] would have to 'get used to it.'"  ECF No. 38 ¶ 56.  She also alleges that after she complained to Lyumkis about the "Pay Advance" agreement, he "verbally attacked" her.  *Id.* ¶ 49.  But Reeve alleges only that these incidents took place at some point in January 2023.  *Id.* ¶¶ 47, 56.  Thus, it is unclear whether they happened after January 12, 2023.

[8] Defendants also do not argue that Reeve's allegations—either before or after the statute of limitations date, or collectively—were insufficiently severe or pervasive enough to make out a

No. 43 at 1.  Thus, the only question before the Court is whether the remaining incidents recounted in the Amended Complaint (which are alleged to have occurred between July 2022 and January 2023, *see* ECF No. 38 ¶¶ 22–45) may be included as part of Reeve's DCHRA hostile work environment claim.[9]  The problem with this argument is that hostile work environment claims are subject to the continuing violations doctrine.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  But "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115.  Thus, hostile work environments are subject to the "continuing violation doctrine." *Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 230 (D.D.C 2013).[10]  This doctrine holds that, because of the unique nature of a hostile environment claim, "so long as

---

viable claim.  *See* ECF No. 43 at 7; *Gonzalez v. Garland*, 21-cv-1653 (TSC), 2023 WL 6160013, at *6 (D.D.C. Sept. 21, 2023).  They make a stab at such an argument in their reply brief, but it is well established that courts "generally refuse to entertain arguments raised for the first time in a party's reply brief." *Khadr v. United States*, 529 F.3d 1112, 1117 (D.C. Cir. 2008).

[9] As a practical matter, then, the Court's ruling on this point likely has little effect on how the case will proceed.  Even if the Court agreed with Monex and Green that Reeve's allegations before January 12, 2023, could not form the basis for her DCHRA hostile work environment claim, it would not dismiss the claim itself.  Moreover, these allegations would likely be fair game for discovery as background evidence in support of a timely claim.  *See Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137 (D.D.C. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002)) ("For hostile-work-environment claims, then, discriminatory acts may be used by a plaintiff in proving the claim, even if those actions occurred outside of the filing period.").  They would likely also be discoverable, at a minimum, in connection with Reeve's Title VII hostile work environment claim, which Monex has not sought to dismiss.

[10] Although the Supreme Court discussed the continuing violation doctrine in the context of a Title VII hostile work environment claim, that "analysis has been expressly extended to hostile work environment claims under the DCHRA." *Motley-Ivey*, 923 F. Supp. 2d at 230 (citing *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C. 2003)).

at least one of the acts that contributed to the hostile environment occurs within the filing period, other acts that also contributed to the claim but that did not occur within the filing period may also be considered." *Vickers v. Powell*, 493 F.3d 186, 198 (D.C. Cir. 2007).

Time-barred acts may contribute to a hostile work environment claim so long as they are "adequately connected" to the timely filed acts, meaning that they involve "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Gonzalez v. Garland*, 21-cv-1653 (TSC), 2023 WL 6160013, at *6 (D.D.C. Sept. 21, 2023) (quoting *Morgan*, 536 U.S. at 120). The D.C. Circuit has understood "adequately connected" to require a relatively low level of connection. In *Vickers*, the Court found the conduct of a former supervisor to be reasonably part of the same hostile work environment created by a subsequent supervisor even though the later conduct was undertaken by a different person, was of a different character (sexual vs. non-sexual), and occurred over an eight-year period before the timely filed actions. *See Vickers*, 493 F.3d 197–99; *see also Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 76 (2013) (holding that acts perpetrated "by different individuals at different levels of the organization" and that "took place in entirely different settings," were still part of the same unlawful employment practice). Essentially, the question comes down to whether the conduct is "adequately linked into a coherent hostile environment claim." *Panarello v. Zinke*, 254 F. Supp. 3d 85, 101 (D.D.C. 2017) (internal quotation omitted), *aff'd sub nom. Panarello v. Bernhardt*, 788 F. App'x 18 (D.C. Cir. 2019).

Of course, at this stage, the Court must assume the truth of the allegations in the Amended Complaint. *Gonzalez*, 2023 WL 6160013, at *1. And taking those allegations as true, the Court has little difficulty finding that the alleged time-barred acts are "adequately connected" to the alleged acts after January 12, 2023. The essence of Reeve's hostile work environment claim is that Defendants "permitted a culture antagonistic to women and, specifically, women who challenged

male authority."  ECF No. 38 ¶ 57.  And as alleged in the Amended Complaint, both the time-barred and timely filed acts, committed by the same employees, show "common themes" that contributed to a coherent hostile work environment narrative.  *Panarello*, 254 F. Supp. 3d at 101.

Begin with the series of incidents between Lyumkis, Green and Reeve between July and September 2022—before the statute of limitations date.  Reeve alleges that during this period, she raised various compliance concerns with Lyumkis and Green, who in response, would "demean, berate, and/or dismiss [her] . . . because she is a woman."  ECF No. 38 ¶¶ 32–33.  These acts are of the same character as the timely filed acts.  As discussed above, the timely acts include that Lyumkis was "incredibly hostile" to Reeve in a February 2023 "inflammatory" email, and that Green ignored her concerns.  Accordingly, Lyumkis and Green's alleged "demean[ing], berat[ing], and/or dismiss[ive]" conduct between July and September 2022, reflects the same type of abusive and dismissive behavior, perpetrated by the same managers, as the timely filed acts, and are thus "adequately connected" to the same hostile work environment claim.

The Amended Complaint also recounts a series of specific alleged actions by Lyumkis that happened after September 2022 that are also "adequately connected" to the timely filed acts.  For example, it alleges that in November 2022, after Reeve told Lyumkis that she did not send an agreement to a client, he "screamed at [her] so aggressively and maliciously that other employees had to come over and calm him down."  ECF No. 38 ¶ 43.  Reeve also claims that sometime in January 2023, Lyumkis "verbally attacked" her for complaining about an improperly signed "Pay Advance" agreement.  *Id.* ¶ 49.  Viewed in this context, the "incredibly hostile" and "inflammatory" email sent by Lyumkis in February 2023 followed a pattern of verbal abuse by him against Reeve for raising compliance concerns.  The alleged time-barred acts are therefore of the same type (verbal abuse) and perpetrated by the same person (Lyumkis) as the timely filed act.  Thus,

once again, the Court has little difficulty concluding that Lyumkis's acts alleged to have occurred in November 2022 and January 2023 are "adequately connected" to the "inflammatory" email, which was within the statute of limitations.

So too with Green's alleged conduct after September 2022.  Reeve alleges that in November 2022, Green "berated her for over two hours" for refusing to remove certain compliance factors from the client onboarding process.  ECF No. 38 ¶¶ 37–38.  She also alleges that Green consistently ignored her concerns and complaints.  For example, she alleges that he ignored her concerns about an approval for a new vendor, *id.* ¶ 39, and that after she complained to him that a Monex employee was "bullying and demeaning," he replied by saying "'that's just how he is,' and that [Reeve] would have to 'get used to it,'" *id.* ¶ 56.  This pattern of ignoring Reeve's complaints and belittling her continued after January 12, 2023, when Green again ignored Reeve's concerns that she was being treated differently as a woman.  *Id.* ¶¶ 54–55.  Here too then, the timely filed allegations are a continuation of the same sort of acts, allegedly taken by the same person, that allegedly happened before January 12, 2023.  Moreover, the conduct about which Reeve allegedly complained to Green when he "ignored her concerns," was the verbal abuse from Lyumkis—which reinforces how all the acts alleged in the Amended Complaint were part of the same coherent hostile work environment narrative.  Thus, the Court again concludes that Green's alleged time-barred actions are adequately connected to the timely filed acts and may be considered as part of Reeve's DCHRA hostile work environment claim.

Monex and Green offer little in response.  They note that the continuing violations doctrine is not "an open sesame to recovery for time-barred violations."  ECF No. 48 at 4 (citing *Stephens v. Mnuchin*, 317 F. Supp. 3d 413, 420 (D.C.C. 2018)).  Fair enough.  But they offer no reasoning as to why at this stage at least, the time-barred allegations against them here are not "adequately

connected" to the timely filed acts.  Indeed, they merely assert in conclusory fashion that "[t]he limited pre-January 12, 2023, events alleged in the Amended Complaint are neither adequately connected nor sufficiently severe or pervasive." *Id*.  The Court is unmoved by this statement which "presents only a legal conclusion, not an argument." *Saunders v. Mills*, 172 F. Supp. 3d 74, 96 (D.D.C. 2016).

In sum, the acts alleged in the Amended Complaint—both those that occurred before and after January 12, 2023—reflect the same type of unlawful employment practices and were largely perpetrated by the same individuals.  Thus, the Court finds that, as alleged, they are all "adequately connected" to the same hostile work environment claim.  Thus, by operations of the continuing violations doctrine, they can all support Reeve's claim at this stage. *Vickers*, 493 F.3d at 198.

## IV.  Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 43, is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** insofar as it seeks to dismiss Defendant Lyumkis from this suit for lack of personal jurisdiction.  It is further **ORDERED** that Defendant Lyumkis is **DISMISSED** as a defendant in this suit.  The Motion is **DENIED** insofar as it seeks to partially dismiss the DCHRA hostile work environment claims against Defendants Monex and Green.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 29, 2024